UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THELMA JEAN NELSON,

                Plaintiff,                 Case No. 2:20-cv-10408
                                       District Judge George Caram Steeh
v.                                Magistrate Judge Anthony P. Patti

COMMISSIONER OF
SOCIAL SECURITY
ADMINISTRATION,

                Defendant.

_____/

**REPORT AND RECOMMENDATION TO DENY PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT (ECF No. 19), GRANT DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT (ECF No. 22), and AFFIRM THE
COMMISSIONER'S DECISION**

I.    **RECOMMENDATION**:  For the reasons that follow, it is

**RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary

judgment (ECF No. 19), **GRANT** Defendant's cross-motion for summary

judgment (ECF No. 22), and **AFFIRM** the Commissioner's decision.

II.    **REPORT**

        Plaintiff, Thelma Jean Nelson, brings this action under 42 U.S.C. §§ 405(g)

and/or 1383(c)(3) for review of a final decision of the Commissioner of Social

Security ("Commissioner") denying her application for disability insurance (DI)

benefits.  This matter is before the United States Magistrate Judge for a Report and

Recommendation on Plaintiff's motion for summary judgment (ECF No. 19), the

Commissioner's cross-motion for summary judgment (ECF No. 22), Plaintiff's

reply (ECF No. 23), and the administrative record (ECF No. 15).

A.     **Background and Administrative History**

Plaintiff filed the DI application at issue in this appeal in May 2017, alleging

that her disability began on January 3, 2016, at the age of 43.  (ECF No. 15-5,

PageID.227-228.)  In her disability report, she alleged that certain conditions

(seizures, anxiety, depression, atrial fibrillation, and tetralogy of Fallot) limit her

ability to work.  (*Id*., PageID.245.)  On August 24, 2017, the Social Security

Administration (SSA) found that Plaintiff was not disabled.  (ECF No. 15-3,

PageID.142-161.)

Plaintiff requested a hearing by an Administrative Law Judge ("ALJ").

(ECF No. 15-4, PageID.164-165.)  On July 2, 2018, ALJ Allison Dietz held a

hearing, at which Plaintiff and a vocational expert (VE), Scott Silver, testified.

(ECF No. 15-2, PageID.101-140; *see also id*., ECF No. 15-6, PageID.335-337.)

On October 30, 2018, ALJ Dietz issued an opinion, which determined that Plaintiff

was not disabled within the meaning of the Social Security Act.  (ECF No. 15-2,

PageID.79-100.)

Plaintiff submitted a request for review of the hearing decision and

submitted medical records dated December 2018 to the Appeals Council.  (ECF

No. 15-4, PageID.222-225; ECF No. 15-2, PageID.64-73.)  However, on

September 25, 2019, the Appeals Council denied Plaintiff's request for review.

(*Id*., PageID.57-63.)  Thus, ALJ Dietz's decision became the Commissioner's final

decision.  Plaintiff requested an extension of time to file a civil action.  (*Id*.,

PageID.55-56.)  The Appeals Council permitted an extension (*id*., PageID.52-54),

and Plaintiff timely commenced this matter on February 18, 2020.

### B.    Plaintiff's Medical History

Excepting the December 2018 materials sent to the Appeals Council, the

administrative record contains approximately 1,170 pages of medical records,

which were available to the ALJ at the time of the October 30, 2018 decision.

(ECF No. 15-2, PageID.99-100; ECF No. 15-7, PageID.341 – ECF No. 15-18,

PageID.1521 [Exhibits 1F-14F].)  These materials will be discussed in detail, as

necessary, below.

### C.    The Administrative Decision

Pursuant to 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), at **Step 1** of the

sequential evaluation process, the ALJ found that Plaintiff had not engaged in

substantial gainful activity since January 3, 2016, the alleged onset date (AOD).

(ECF No. 15-2, PageID.85.)  At **Step 2**, the ALJ found that Plaintiff had several

severe impairments (pulmonary hypertension; heart failure with preserved ejection

fraction; recurrent arrhythmias; depressive disorder; and anxiety disorder).  (*Id*.,

3

PageID.85.)  At **Step 3**, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.  (*Id*., PageID.86-88.)  **Between Steps 3 and 4** of the sequential process, the ALJ evaluated Plaintiff's residual functional capacity ("RFC")[1] and determined that Plaintiff had the RFC:

> . . . to perform light work [*i.e., exertional limitations*] . . . except the claimant can never climb ladders, ropes, or scaffolds.  The claimant can occasionally climb ramps and stairs, balance on uneven or slippery surfaces, stoop, kneel, crouch, and crawl [*i.e., postural limitations*].  The claimant must avoid all exposure to extreme cold, extreme heat, unprotected heights, and moving mechanical parts [*i.e., environmental limitations*].  The claimant requires the option to sit and stand, at will [*i.e., exertional limitations*], where it does not take her off task more than 10% of the workday [*i.e., concentration, persistence or pace (CPP) limitations*].  The claimant must never be exposed to atmospheric conditions at level greater than a normal indoor work environment, such as an office or retail store [*i.e., environmental limitations*].  The claimant is limited to "low stress" work, defined as simple, routine tasks in an environment free from fast-paced production (such as an assembly line wherein all tasks must be completed within strict timeframes) with only simple work-related decision-making and few, if any, workplace changes [*i.e., limitations on understanding, remembering, or applying information; CPP; and/or adapting or managing oneself*].  The claimant is limited to occasional contact with supervisors, coworkers, and the general public [*i.e., limitations on interacting with others*].  The claimant requires that instructions be provided by demonstration [*i.e., limitations on understanding, remembering, or applying information*].

---

[1] The claimant's "residual functional capacity" is an assessment of the most the claimant can do in a work setting despite his or her physical or mental limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a); *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002).

(*Id.*, PageID.88-94.)  At **Step 4**, the ALJ determined that Plaintiff was unable to perform any past relevant work.  (*Id.*, PageID.94-95.)  At **Step 5**, considering Plaintiff's age, education, work experience, and RFC, the ALJ found that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform.  (*Id.*, PageID.95-96.)  The ALJ therefore concluded that Plaintiff had not been under a disability, as defined in the Social Security Act, from January 3, 2016, through the date of the decision.  (*Id.*, PageID.96.)

### D.    Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir.

1994)).  In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility."  *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision.  *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).  Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'"  *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

### E.    Analysis

Plaintiff contends that:  (1) the ALJ erred in evaluating Plaintiff's mental impairments at Step 3; (2) the ALJ erred in evaluating the opinion evidence; (3) the ALJ erred in evaluating Plaintiff's subjective complaints; and, (4) Plaintiff submitted new and material evidence to the Appeals Council.  (ECF No. 19, PageID.1539-1552; *see also* ECF No. 23.)  Plaintiff has the burden of proof on each of these statements of error.  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).

### 1.    Step 3

At Step 2, ALJ Dietz determined that Plaintiff's severe impairments included depressive disorder and anxiety disorder.  (ECF No. 15-2, PageID.85.) Moreover, after referencing a letter from Plaintiff's Accredited Disability Representative (ADR) and Plaintiff's hearing testimony, the ALJ determined that Plaintiff's alleged impaired/reduced intellectual functioning was not a medically determinable impairment.  (*Id*.; *see also* ECF No. ECF No. 15-6, PageID.334.) Then, at Step 3, the ALJ determined that "[t]he severity of the claimant's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.04 [Depressive, bipolar and related disorders] and 12.06 [Anxiety and obsessive-compulsive disorders]."  (ECF No. 15-2, PageID.86-88.) Specifically, the ALJ determined that Plaintiff had mild limitation in

7

"understanding, remembering, or applying information," but had moderate limitation in the remaining "Paragraph B" factors – "interacting with others," "concentrating, persisting, or maintaining pace," and "adapting or managing oneself." (*Id*.)[2]

Plaintiff's Step 3 argument challenges two of the "Paragraph B" conclusions. (ECF No. 19, PageID.1539-1544; *see also* ECF No. 23, PageID.1592-1593.)

### a.    Understanding, remembering, or applying information

After noting that the ALJ did not rely on the opinion of a mental health professional, Plaintiff contends the ALJ did not consider the impact of her learning disability – as evidenced by the 17 pages of education records dated August 1976 to January 1988 (ECF No. 15-6, PageID.312-328 [Ex. 10E]; *see also* ECF No. 15-1, PageID.49), *i.e.*, records that were approximately 30 years old at the time of the ALJ's October 30, 2018 decision – when concluding that Plaintiff was only mildly limited in "understanding, remembering, or applying information." (ECF No. 19, PageID.1539-1541.) More substantively, Plaintiff claims that "[t]his critical

---

[2] The ALJ supported each of these conclusions with general, non-specific references to: (i) Plaintiff's function report, which was completed by Ledbetter (ECF No. 15-6, PageID.277-284 [Ex. 5E]); (ii) records from Team Mental Health (ECF No. 15-10, PageID.658 – ECF No. 15-12, PageID.1009 [Ex. 5F]; ECF No. 15-16, PageID.1350-1516 [Ex. 13F]); and, (iii) the hearing testimony (ECF No. 15-2, PageID.101-140). (*Id*., PageID.87-88.)

evidence ignored by the ALJ could lead to the inference that the four areas combined could medically equal Listing 12.04 or 12.05 [Intellectual disorder]." (*Id.*, PageID.1541.)

Plaintiff's arguments are unconvincing.  First, as for evidentiary requirements for determining medical equivalence, Disability Determination Services (DDS) determined that a CE was not required (ECF No. 15-3, PageID.146), and Plaintiff's observations that the ALJ was not persuaded by the mental health opinion evidence from the state agency psychological consultant or Plaintiff's treating psychiatrist (ECF No. 15-2, PageID.92-94)[3] – coupled with a citation to SSR 17-2p ("Evidence Needed by Adjudicators at the Hearings and Appeals Council Levels of the Administrative Review Process to Make Findings about Medical Equivalence"), 2017 WL 3928306 (S.S.A. Mar. 27, 2017) – does not illustrate that the ALJ was *required* to order a consultative examination or *erred* by proceeding without one.  (ECF No. 19, PageID.1540-1451; ECF No. 23, PageID.1589-1590.)

Second, although it seems that the ALJ did not expressly cite the special education records, an ALJ is not obligated to expressly mention each piece of

---

[3] On August 14, 2017, state agency psychological consultant Stephanie Fearer, Ph.D. opined that Plaintiff's "depressive, bipolar and related disorders" and "anxiety and obsessive-compulsive disorders" were "non severe."  (ECF No. 15-3, PageID.146-148.)

evidence. *Bailey v. Comm'r of Soc. Sec.*, 413 F. App'x 853, 855 (6th Cir. 2011) (an ALJ "is not required to analyze the relevance of each piece of evidence individually. Instead, the regulations state that the decision must contain only 'the findings of facts and the reasons for the decision.'") (quoting 20 C.F.R. § 404.953). Relatedly, the Court notes the ALJ's finding that Plaintiff has past relevant work experience (ECF No. 15-2, PageID.94-95), and the special education records dated 1976-1988 significantly pre-date Plaintiff's January 3, 2016 AOD. Thus, it is logical that the ALJ omitted express reference to such records.

Third, as discussed in further detail below with respect to the opinion evidence, at the outset of the ALJ's opinion, she explained her denial of Plaintiff's June 25, 2018 request to be sent "for IQ testing to support her claim of disability due to diminished intelligence . . . ." (ECF No. 15-2, PageID.82; ECF No. 15-6, PageID.334.) Finally, and perhaps most importantly, as noted above, the ALJ expressly cited Plaintiff's representative's June 25, 2018 letter – which itself mentions "extremely low academic achievement and history of special education," (ECF No. 15-6, PageID.334) – when determining at Step 2 that Plaintiff's alleged impaired/reduced intellectual functioning was not a medically determinable impairment, because "this condition is not identified in the record by anatomical, physiological, or psychological abnormalities shown by medically acceptable clinical and laboratory diagnostic techniques." (ECF No. 15-2, PageID.85.)

**b.      Concentrating, persisting, or maintaining pace**

Plaintiff contends that the ALJ "did not sufficiently articulate Nelson'[s] moderate limitations in concentration, persistence or pace in her questioning of the VE." (ECF No. 19, PageID.1541-1544; ECF No. 15-2, PageID.87, 135-136; *see also* ECF 23, PageID.1591-1592.)  "In order for a vocational expert's testimony in response to a hypothetical question to serve as substantial evidence in support of the conclusion that a claimant can perform other work, the question must accurately portray a claimant's physical and mental impairments."  *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 516 (6th Cir. 2010).

Although Plaintiff's articulation argument suggests a discrepancy between the ALJ's CPP finding and the hypothetical posed to the VE, the VE's testimony mirrors the ALJ's RFC determination.  (*Compare* ECF No. 15-2, PageID.87-88; *with* ECF No. 15-2, PageID.135-136.)  And it does not seem that Plaintiff is challenging the ALJ's conclusion that Plaintiff is moderately limited with regard to CPP.  Thus, Plaintiff's CPP argument seems to be one challenging whether the RFC's CPP limitations – *i.e.*, "not . . . off-task more than 10% of the workday" and "simple, routine tasks in an environment free from fast-paced production" – adequately account for her moderate limitations in CPP.  Within this argument, Plaintiff cites several pieces of evidence, such as:

> (i)      Hon Chan, D.O.'s June 21, 2018 mental RFC questionnaire,
>          which reflects that Plaintiff is unable to meet competitive

standards in several of the mental abilities and aptitudes needed to do unskilled work (ECF No. 15-15, PageID.1345-1348);

(ii)    Plaintiff's education records, for evidence of special education (ECF No. 15-6, PageID.312-328 [Ex. 10E]);

(iii)   The June 6, 2017 third-party function report completed by Victoria Ledbetter – to whom Plaintiff refers as her "adopted mom" (ECF No. 15-2, PageID.107-108) – for its remarks on memory, understanding and concentration (ECF No. 15-6, PageID.274);

(iv)    the VE's testimony that a need for "frequent supervision" would preclude "all competitive employment[,]" (ECF No. 15-2, PageID.137);

(v)     Plaintiff's June 6, 2017 function report (ECF No. 15-6, PageID.277-284 [Ex. 5E]), which the ALJ mentions in her decision (*see* ECF No. 15-2, PageID.87-88, 93-94) but allegedly does not attribute it to Ledbetter, who completed it; and,

(vi)    Plaintiff's hearing testimony that Mrs. Ledbetter fills out the Social Security forms and that Plaintiff does not comprehend the letters from Social Security (ECF No. 15-2, PageID.128).

(ECF No. 19, PageID.1542-1544; *see also* ECF No. 23, PageID.1590-1591.)

Plaintiff's argument is unavailing.  Although the ALJ did not expressly cite the educational records, she explained her denial of Plaintiff's request for IQ testing, and she determined that Plaintiff's alleged impaired/reduced intellectual functioning was not a medically determinable impairment.  (ECF No. 15-2, PageID.82, 85.)  As for the ALJ's treatment of Dr. Chan's mental RFC questionnaire, the third-party function report, and Plaintiff's hearing testimony,

these items are addressed elsewhere in this report, namely within the opinion

evidence and subjective symptom discussions.  As for Plaintiff's June 6, 2017

function report, which was completed by Ledbetter (ECF No. 15-6, PageID.277-

284 [Ex. 5E]), the ALJ considered it within the Step 3 discussion of the four

functional areas and within the RFC discussion.  (*See*, *e.g.*, ECF No. 15-2,

PageID.87, 89, 94.)[4]  Plaintiff appears to be correct that "the ALJ referred to

Nelson's Adult Function Report," but "neglected to mention that Ledbetter filled

out the report on Nelson's behalf, as Nelson testified at the hearing[,]" (ECF No.

19, PageID.1543).  Even so, this observation does not, on its own, illustrate that the

ALJ's CPP limitations fail to accommodate Plaintiff's related "moderate

limitation."

Moreover, even though the VE testified that a need for frequent supervision

would be work preclusive, the ALJ did not adopt "frequent supervision" as a

limitation in Plaintiff's RFC; relatedly, the RFC only "requires that instructions be

provided by demonstration."  (ECF No. 15-2, PageID.88.)  Here, the ALJ:  (a)

denied Plaintiff's request for IQ testing; (b) concluded that Plaintiff's

impaired/reduced intellectual functioning is not a medically determinable

---

[4] One of the ALJ's references to Plaintiff's "adult function report" is actually a citation to the third-party function report.  (ECF No. 15-2, PageID.89.)  In other words, the ALJ cited Exhibit 4E – the Third Party Function Report (ECF No. 15-6, PageID.269-276) instead of Exhibit 5E – Plaintiff's Function Report (ECF No. 15-6, PageID.277-284).

impairment (which conclusion undoubtedly eliminated express discussion of

Listing 12.05); (c) concluded that Plaintiff's mental impairments (*i.e.*, depression

and anxiety) do not meet or equal Listings 12.04 or 12.06; but (d) still included

mental health limitations within the RFC.

Plaintiff argues that the ALJ "minimized her learning disability and focused

instead on brief notations as to her mental status in medical records[,]" (ECF No.

19, PageID.1543), in support of which she seems to cite the ALJ's concluding

remarks on Plaintiff's "severe mental impairments," *e.g.*, "she is routinely found to

have normal/unremarkable memory, cognition, and thought processes during

mental status exams," (ECF No. 15-2, PageID.94).  Yet, this argument is akin to

one that the ALJ mischaracterized or "cherry-picked" the record, which argument

is frequently made and seldom successful, because "the same process can be

described more neutrally as weighing the evidence."  *White v. Commissioner*, 572

*F.3d 272, 284 (6th Cir. 2009)*.  "Our task is not to reweigh the evidence.  That is

solely the province of the Secretary."  *Mullins v. Sec'y of Health & Human Servs.*,

*680 F.2d 472, 472 (6th Cir. 1982)* (citing *Wokojance v. Weinberger*, 513 F.2d 210

*(6th Cir. 1975))*.  Furthermore, Plaintiff has not successfully challenged the Step 2

or Step 3 mental health conclusions.  Instead, she challenges the RFC's CPP

limitations, which requires a showing that such limitations do not accommodate

her "moderate limitation" with regard to CPP.  (*Compare* ECF No. 15-2,

PageID.87; *with, id.*, PageID.88.)  She has not made such a showing.

### 2.  Opinion evidence

Plaintiff filed her application for benefits in May 2017.  (ECF No. 15-5,

PageID.227-228.)  Accordingly, the SSA assess opinion evidence in accordance

with 20 C.F.R. § 404.1520c ("How we consider and articulate medical opinions

and prior administrative medical findings for claims filed on or after March 27,

2017.").  Acknowledging this regulation, ALJ Dietz reviewed the opinion evidence

and made several, express assignments of weight that are relevant to this statement

of error.  (ECF No. 15-2, PageID.88, 92-94.)

### a.  Mental health

Plaintiff challenges the ALJ's discounting of the mental health opinion

evidence, namely that of her "longtime treating psychiatrist," Dr. Chan, who

Plaintiff claims rendered "the only opinion of record related to functioning, taking

raw data and translating [it] into vocational terms."  (ECF No. 19, PageID.1544-

1547.)  By way of background, ALJ Dietz extensively discussed Plaintiff's mental

health treatment records, even if without attribution.  At the outset of her decision,

the ALJ noted that Plaintiff's "own treating psychiatrist indicated that the claimant

*does not have a 'low IQ'* or 'reduced intellectual functioning'[,]" and that "there is

absolutely nothing in the psychiatric treatment notes to indicate that the

psychiatrist even suspected of a need to perform intelligence testing[.]"  (ECF No.

15-2, PageID.82 (emphasis added).)  Also, the ALJ's RFC discussion contains a

lengthy review of Plaintiff's "extensive mental health treatment at Team Wellness .

. . ."  (ECF No. 15-2, PageID.90-92; *see also* ECF Nos. 15-10, 15-11 & 15-12 [Ex.

5F] & ECF Nos. 15-16 & 15-17 [Ex. 13F].)

As for Dr. Chan's June 21, 2018 mental RFC questionnaire (ECF No. 15-15,

PageID.1345-1348), the ALJ stated:

> Dr. Chan . . . opined that the claimant was unable to meet competitive
> standards for many abilities necessary to complete unskilled work,
> semi-skilled work, and skilled work.  In addition, Dr. Chan opined
> that the claimant would be unable to meet competitive standards in
> interacting appropriately with the general public, travel to unfamiliar
> places, and use public transportation.  Lastly, Dr. Chan also opined
> that even though the claimant does not have a low IQ or reduced
> intellectual functioning, she would be absent from work more than 4
> days per month . . . .

(ECF No. 15-2, PageID.93.)  The ALJ found this opinion to be "unpersuasive" via

a lengthy explanation.  (*Id.*, PageID.93-94.)  Preliminarily, the ALJ concluded that

the opinion "is consistent with the overall evidence of record" to the extent Dr.

Chan opined that Plaintiff "does not have a low IQ or reduced intellectual

functioning[.]"  (*Id.*, PageID.93.)  However, the ALJ continued to explain how the

majority of Dr. Chan's opinion "is not supported by his own treatment records or

consistent with the evidence of record as a whole[,]" as to which he generally cited

Team Wellness records (Exhibits 5F & 13F), cited records from Dr. Alosachie

(ECF No. 15-13, PageID.1036, 1042), and pointed to Plaintiff's endorsement of "a wide range of activities of daily living . . . ." (*Id.*, PageID.93-94.)  Thus, it is clear the ALJ considered the "most important factors" – *i.e.*, supportability and consistency – when evaluating the persuasiveness of Dr. Chan's mental RFC assessment.  20 C.F.R. § 404.1520c(b)(2),(c)(1)-(2).  Moreover, having identified Dr. Chan as a psychiatrist and having expressly mentioned his name throughout the review of Team Wellness records (*see id.*, PageID.90-92), the ALJ was certainly aware of the relationship and specialization factors.  20 C.F.R. 404.1520c(c)(3)-(4).

Plaintiff has not shown how the ALJ's application of 20 C.F.R. 404.1520c was errant; in fact, she does not even cite this regulation in her opinion evidence statement of error.  (ECF No. 19, PageID.1545-1546.)  To the extent Plaintiff relies upon "evidence of significant anxiety, classified as severe" within the Packard Community Clinic records (ECF No. 15-8, PageID.590-609), these records predate the January 3, 2016 AOD.  More importantly, neither Plaintiff's various citations to the Team Wellness records for evidence of anxiety, affect, depression, therapy, and medication (*see* Exhibits 5F and 13F), nor Plaintiff's acknowledgment that "at times her symptoms were noted to be stable[,]" show *error* in the ALJ's discounting of Dr. Chan's mental RFC assessment.  Indeed, the ALJ accurately characterized Dr. Chan's description of Plaintiff's prognosis as follows:  "the

claimant would be able to maintain mental stability through medications and therapy." (*Compare* ECF No. 15-15, PageID.1345; *with* ECF No. 15-2, PageID.93.)

In sum, notwithstanding the absence of a mental health consultative examination (*see* SSR 17-2p) and the ALJ's conclusions that Dr. Chan's mental RFC questionnaire and Dr. Fearer's opinions were unpersuasive, the ALJ specifically rejected Dr. Fearer's conclusions that Plaintiff's mental impairments – *i.e.*, anxiety and depression – were "non severe," a conclusion which she supported with a general reference to the Team Wellness records at Exhibits 5F and 13F. (*See* ECF No. 15-2, PageID.92; ECF No. 15-3, PageID.147.) Although the ALJ found Plaintiff's anxiety and depression to be "no more than moderate in severity," the ALJ concluded that these "mental impairments would reasonably cause more than minimal limitations in her ability to complete work related activities[,]" and assessed multiple RFC limitations related to Plaintiff's mental health.

### b.    Physical health

Plaintiff challenges the ALJ's rejection of the physical health opinion evidence, namely that of her "longtime primary care physician," Ramy Alosachie, M.D. (ECF No. 19, PageID.1544, 1547.) By way of background, ALJ Dietz's review of Plaintiff's physical health records includes express citations to heart and vascular records (Ex. 2F, Ex. 4F, and Ex. 9F), as well as records from Henry Ford

Wyandotte Hospital (Ex. 8F), even if not with attribution.  (ECF No. 15-2, PageID.89-90.)  It appears that Plaintiff treated with Dr. Alosachie or his office as early as August 2015 and as late as June 2018.  (ECF No. 15-13, PageID.1011-1150 [Ex. 6F], ECF No. 15-15, PageID.1280-1344 [Ex. 11F].)

Within the ALJ's discussion of the opinion evidence, she acknowledged Dr. Alosachie as Plaintiff's primary care physician.  (ECF No. 15-2, PageID.92.)  As for Dr. Alosachie's June 22, 2018 physical RFC questionnaire – which opined that Plaintiff was incapable of even "low stress" jobs (as "stress can cause seizures"), had various exertional and postural limitations, would sometimes need to take unscheduled breaks, and would, on average, be absent "[m]ore than four days per month[,]" (ECF No. 15-18, PageID.1518-1521) – the ALJ found the opinion "to be unpersuasive."  (ECF No. 15-2, PageID.92-93.)  In a lengthy paragraph, the ALJ explained that "[t]he severity of the limitations included in his opinion are not consistent with his own objective findings during medical visits throughout the record[,]" "[t]here is simply no objective evidence contained in Dr. Alosachie's treatment notes to support such severe limitations[,]" "Dr. Alosachie's opinion is not consistent with the findings of Dr. Kahn, who indicated that the claimant could walk more than 2 blocks and was not limited in her daily activities[,]" and "the mental impairments contained in Dr. Alosachie's opinion are not consistent with the evidence of record as a whole."  (*Id*., PageID.93.)  Thus, it is clear the ALJ

considered the "most important factors" – *i.e.*, supportability and consistency –
when evaluating the persuasiveness of Dr. Alosachie's physical RFC assessment.
20 C.F.R. § 404.1520c(b)(2),(c)(1)-(2).  Moreover, having identified Dr. Alosachie
as Plaintiff's primary care physician, the ALJ was certainly aware of the
relationship factor.  20 C.F.R. 404.1520c(c)(3).

The ALJ also considered the August 14, 2017 physical RFC assessment by
state agency medical consultant Jack Hutcheson, M.D., who assessed exertional
limitations consistent with light work but with additional postural and
environmental limitations.  (ECF No. 15-3, PageID.149-152.)  The ALJ found this
opinion "to be persuasive . . . [,]" as it was "supported by the objective evidence
and consistent with evidence of record as a whole" and was "consistent with the
objective evidence from Drs. Kahn and Hashem in showing that the claimant's
irregular heartbeat would limit her physical functionality[.]"  (ECF No. 15-2,
PageID.92.)  Moreover, the ALJ appears to have been persuaded by Dr.
Hutcheson's references to Plaintiff's cardiology-related issues as an explanation
for the assessed exertional limitations and/or postural limitations.  (*Id*.; ECF No.
15-3, PageID.150).  Thus, it is clear the ALJ considered the "most important
factors" – *i.e.*, supportability and consistency – when evaluating the persuasiveness
of Dr. Hutcheson's physical RFC assessment.  20 C.F.R. § 404.1520c(b)(2),(c)(1)-
(2).  Moreover, having identified Dr. Hutcheson as a "DDS medical consultant . . .

[,]" the ALJ was certainly aware there was no treatment or examining relationship.

20 C.F.R. 404.1520c(c)(3) ("Relationship with the claimant.").

Plaintiff's challenges to the ALJ's treatment of the physical health opinion

evidence are two-fold.  First, given Dr. Alosachie's comments that Plaintiff had

atypical flutter, tetralogy of Fallot, and seizure disorder (ECF No. 15-18,

PageID.1518), Plaintiff takes issue with the ALJ's statement that "[w]hile Dr.

Alosachie noted the claimant's diagnoses for cardiac impairments and found

murmurs and irregular heartbeats upon physical examination, he regularly referred

the claimant to her cardiologists for specialized treatment[,]" (ECF No. 15-2,

PageID.93).[5]  (ECF No. 19, PageID.1547.)  If, as Plaintiff suspects, the ALJ was

"faulting" Dr. Alosachie as to these diagnoses, it would be consistent with an

ALJ's consideration of the specialization factor, 20 C.F.R. 404.1520c(c)(4), or lack

thereof, as Dr. Alosachie is not a cardiologist or neurologist.  Moreover, even if the

ALJ errantly discounted Dr. Alosachie on these *diagnoses*, it is of little import.

The ALJ did not ignore epilepsy and cardiac impairments:  (i) notwithstanding the

fact that the DDS consultant assessed epilepsy as a severe impairment (ECF No.

15-3, PageID.147), the ALJ explained at Step 2 why epilepsy was not a severe

---

[5] In support of this statement, the ALJ cited Dr. Alosachie's July 2016 record,
which notes murmur, and June 2017 record, which notes to follow up with Dr.
Khan.  (ECF No. 15-2, PageID.93; ECF No. 15-13, PageID.1022, 1037.)  The
Court's own review also reveals a November 2017 direction to "follow up with Dr.
Khan."  (ECF No. 15-15, PageID.1291.)

impairment and at Step 3 why epilepsy did not meet Listing 11.02 (ECF No. 15-2, PageID.85-86); and, (ii) the ALJ referenced Plaintiff's "cardiac impairments" throughout the decision.  More importantly, the ALJ discounted Dr. Alosachie's opinion based on the severity of the assessment, *e.g.*, "there is nothing to warrant such extreme physical limitations as those found in Dr. Alosachie's opinion." (ECF No. 15-2, PageID.93 (emphasis added).)

### 3.   Subjective symptoms

#### a.   The ALJ's treatment of subjective statements

ALJ Dietz concluded that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [the alleged] symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision."  (ECF No. 15-2, PageID.89.)  Preliminarily, the ALJ acknowledged 20 C.F.R. 1529 and SSR 16-3p.  (*Id.*, PageID.88.)  Then, the ALJ reviewed Plaintiff's "history and treatment for cardiac impairments . . [,]" Plaintiff's "mental health treatment at Team Wellness . . . [,]" and the opinion evidence.  (*Id.*, PageID.89-94.)  Finally, the ALJ set forth a lengthy paragraph in support of her conclusion that Plaintiff's "allegations of the duration and intensity of her impairments is only partially consistent with the objective medical evidence of record."  (*Id.*, PageID.94.)  While the ALJ noted that Plaintiff had "severe

impairments," she also explained that Plaintiff's "limitations would not be entirely

work preclusive." (*Id.*)

### b.    The SSA's subjective statement regulation

Plaintiff argues that the ALJ "erred in evaluating Nelson's subjective

complaints[.]" (ECF No. 19, PageID.1547-1550; ECF No. 23, PageID.1592-

1593.) The SSA acknowledges that "symptoms, such as pain, are subjective and

difficult to quantify," and, thus, provides that "any symptom-related functional

limitations and restrictions that your medical sources or nonmedical sources report,

which can reasonably be accepted as consistent with the objective medical

evidence and other evidence, will be *taken into account* as explained in paragraph

(c)(4) of this section in reaching a conclusion as to whether you are disabled." 20

C.F.R. §§ 404.1529(c)(3), 416.929(c)(3) (emphasis added). The SSA will consider

relevant factors, including:

(i)    Your daily activities;

(ii)   The location, duration, frequency, and intensity of your pain or
       other symptoms;

(iii)  Precipitating and aggravating factors;

(iv)   The type, dosage, effectiveness, and side effects of any
       medication you take or have taken to alleviate your pain or
       other symptoms;

(v)    Treatment, other than medication, you receive or have received
       for relief of your pain or other symptoms;

(vi)   Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and

(vii)   Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

(*Id*.)   Moreover, "[t]he determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3P, 2017 WL 5180304, *10 (S.S.A. Oct. 25, 2017).  *See also* SSR 16-3p, 2016 WL 1119029, *9 (S.S.A. Mar. 16, 2016) (same).

### c.   Daily activities

Plaintiff's subjective symptoms argument focuses on the ALJ's treatment of Plaintiff's "daily activities[.]"  20 C.F.R. §§ 404.1529(c)(3)(i).  (ECF No. 19, PageID.1548-1550.)  At Step 3, and generally citing the Team Wellness records (Exhibits 5F, 13F), the ALJ noted that "psychiatric progress notes, counseling records, and other evidence fails to establish that the claimant has only marginal adjustment, that is, a minimal capacity to adapt to changes in h[er] environment or to demands that are not already part of his daily life[.]"  (ECF No. 15-2, PageID.88.)  Then, within the RFC discussion's medical records review, the ALJ twice referenced Dr. Khan's March 23, 2017 note that Plaintiff "is able to walk > 2 blocks and complete her daily activities without limitations."  (*Id*., PageID.90, 93;

ECF No. 15-14, PageID.1215.)  Also, on multiple occasions within the Step 3

Listings discussion and again within the discussion of the opinion evidence, the

ALJ referenced that Plaintiff "has endorsed being able to complete a wide range of

activities of daily living . . . ."  (ECF No. 15-2, PageID.94; *see also id.*, 87, 92-93.)

Thus, the ALJ clearly considered Plaintiff's "daily activities."  20 C.F.R.

404.1529(c)(3)(i).

Plaintiff argues that the ALJ failed to note Plaintiff's testimony about

limitations she has with daily activities (*see* ECF No. 15-2, PageID.123-126), and

she takes issue with the ALJ's dismissal of Ledbetter's letter (*see* ECF No. 15-6,

PageID.339).  (ECF No. 19, PageID.1548-1549.)  Neither of these arguments is

convincing.  First, the ALJ referenced Plaintiff's testimony at Step 2, Step 3, and

within the RFC discussion.  (ECF No. 15-2, PageID.85, 87-89, 93-94.)  At the

hearing, Plaintiff testified about her limitations, e.g., she is not able to stand for 15

minutes, does not comprehend well, has experienced stress-induced seizure(s), and

has physical limitations (lifting "maybe five pounds," able to sit for "[m]aybe five

minutes," able to stand for fifteen minutes).  (*Id.*, PageID.123-126.)  But the ALJ's

conclusion that Plaintiff is capable of performing "light work" is supported by Dr.

Hutcheson's August 14, 2017 physical RFC assessment (ECF no. 15-3,

PageID.149-150, 152).  Plaintiff has not successfully challenged the ALJ's

treatment of this opinion.  Additionally, at the July 2, 2018 hearing, Plaintiff

testified that her last seizure was "maybe three years ago[,]" or "January of 2016,"

and she is "on medication for [her] seizures."  (ECF No. 15-2, PageID.123-124.)

Plaintiff also takes issue with the ALJ's dismissal of Ledbetter's letter.

Preliminarily, the Court notes Plaintiff's testimony that she lives with her "adopted

mom" and her "adopted father" (*i.e.*, the Ledbetters), she is "emotionally

adopted[,]" and she has been living with them for "[t]wo years."  (ECF No. 15-2,

PageID.107-108.)  Plaintiff also testified that the Ledbetters manage her finances,

etc., and her adopted mom "calms [her] down . . . ."  (*Id.*, PageID.118, 124.)  The

ALJ reviewed and gave full consideration to Ledbetter's June 6, 2017 Third Party

Function Report (ECF No. 15-6, PageID.269-276) and July 1, 2018 letter (ECF

No. 15-6, PageID.339) in assessing Plaintiff's RFC.  (ECF No. 15-2, PageID.92.)

The ALJ did not find these opinions to be persuasive, because:

> These opinions are subjective assessments and *not supported by any objective medical tests or findings*.  In addition, the opinions are inconsistent with the findings made during mental status exams with Dr. Chan, which demonstrated normal cognitive functioning.  Neither opinion appears to address the claimant's cardiac impairments.

(ECF No. 15-2, PageID.92 (emphasis added).)  Plaintiff seems to challenge the

characterization Ledbetter's opinions are unsupported, "because the record shows

she has undergone psychiatric medication management and therapy for years, yet

still struggles with the symptoms of her anxiety and depression[,]" (ECF No. 19,

PageID.1549); however, the only citation Plaintiff provides is to a December 8,

2015 integrated biopsychosocial assessment as evidence that her adoptive mother "supports me with my mental health, my regular health, with my food, she helps me with pretty much everything I can think of[,]" (ECF No. 15-12, PageID.972). Yet, it does not appear that Plaintiff has a legal guardian or conservator.[6]

### d.    Light work on a regular and continuing basis

Although Plaintiff acknowledges 20 C.F.R. § 404.1529(c), she contends that the ALJ did not follow the provision that, ordinarily, the RFC is "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96-8P (S.S.A. July 2, 1996). (ECF No. 19, PageID.1549-1550.) Her argument is not convincing. She seems to seek an explanation for the ALJ's conclusion that she is capable of work at the "light" exertional level, and asks the Court to rely upon her "debilitating depression and anxiety, coupled with her seizures, which Dr. Alosachie noted could be caused by stress, and other health problems, and the many limitations that

---

[6] Plaintiff also claims that ALJ Dietz "erred by not taking into account Nelson's persistent efforts to seek treatment" for mental and physical impairments. (ECF No. 19, PageID.1549.) Because this statement is unaccompanied by record citations, it does not appear to be a reference to 20 C.F.R. § 404.1529(c)(3)(v) ("Treatment, other than medication, you receive or have received for relief of your pain or other symptoms[.]"); rather, it appears to challenge the ALJ's statement that Ledbetter's function report and letter are "not supported by any objective medical tests or findings." (ECF No. 15-2, PageID.92.)

accompany them," as evidence that she is "incapable of sustained work on a regular and continuing basis . . . ." (ECF No. 19, PageID.1550.)

However, as set forth above within the opinion evidence discussion, Plaintiff has not shown error in the ALJ's rejection of Alosachie's physical RFC questionnaire (ECF No. 15-18, PageID.1519). Additionally, to the extent Plaintiff alleges that the ALJ placed too much reliance on her daily activities (ECF No. 15-2, PageID.87-91), the ALJ's RFC exertional limitation is supported by Dr. Hutcheson's opinions. Accordingly, the ALJ's explanation is adequate.

### 4. New and material evidence

It appears that Plaintiff was treated by neurologist Nawaf Murshed, M.D. in 2016, 2017 and up to May 2018. (ECF No. 15 [Exs. 6F, 7F & 10F.) ALJ Dietz rendered her decision on October 30, 2018. (ECF No. 15-2, PageID.79, 96.) Although without attribution, the ALJ mentioned Michigan Neuroscience Clinic records at Step 2 when concluding that Plaintiff's epilepsy was not a severe impairment and at Step 3 when concluding that Plaintiff's epilepsy did not met Listing 11.02. (ECF No. 15-2, PageID.85-86.)[7] Thereafter, in December 2018, Plaintiff was again treated by Dr. Murshed. (ECF No. 15-2, PageID.64-73.)

---

[7] To the extent, if at all, Plaintiff takes issue with the ALJ's failure to discuss Plaintiff's "longtime ongoing treatment" with neurologist Dr. Murshed of the Michigan Neuroscience Clinic (ECF No. 19, PageID.1551, ECF No. 23, PageID.1593) – including Dr. Murshed's May 15, 2018 progress notes for her complaints of neck pain, numbness, and tingling, and for Dr. Murshed's diagnoses

Plaintiff's final argument concerns these 10 pages of December 2018

medical records, which he submitted to the Appeals Council that same month but

which the Appeals Council determined "d[id] not relate to the period at issue[,]"

and, therefore, "d[id] not affect the decision about whether [Plaintiff] w[as]

disabled beginning on or before October 30, 2018[,]" (ECF No. 15-2, PageID.58,

ECF No. 15-4, PageID.223-225).  (ECF No. 19, PageID.1550-1552; ECF No. 23,

PageID.1593-1594.)  Plaintiff admits that these records post-date the ALJ's

decision, but she points out that the December 2018 records mention a July 10,

2018 EMG – *i.e.*, 8 days after the administrative hearing – which revealed

"[m]inimal bilateral median mononeuropathies at the wr[is]ts[,]" and "[c]hronic

bilateral C5-C6 polyradiculopathy[,]" (ECF No. 15-2, PageID.67).  (ECF No. 19,

PageID.1551.)

To the extent Plaintiff argues that the July 10, 2018 EMG should be

considered on the basis that it "pre-dates" ALJ Dietz's October 30, 2018 decision,

the Sixth Circuit has stated that 42 U.S.C. 405(g):

> . . . is quite explicit as to the standards that must be met before a
> district court may order a sentence six remand for the taking of
> additional evidence.  In particular, it must be shown (i) that the
> evidence at issue is both "new" and "material," and (ii) that there is

of nonintractable idiopathic generalized epilepsy and paresthesia (ECF No. 15-14,
PageID.1268-1269) – the ALJ cited these exact records, *inter alia*, at Step 2 as
support for the conclusion that Plaintiff's epilepsy was not severe, even though
only expressly mentioning Plaintiff's lack of "seizure activity since January 2016 .
. . [,]" (ECF No. 15-2, PageID.85).

> "good cause for the failure to incorporate such evidence into the
> record in a prior proceeding."  42 U.S.C. § 405(g); *see also Cline v.*
> *Commissioner of Social Security*, 96 F.3d 146, 148 (6th Cir.1996).
> The party seeking a remand bears the burden of showing that these
> two requirements are met.  *See Foster v. Halter*, 279 F.3d 348, 357
> (6th Cir.2001).

*Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 483 (6th Cir. 2006).

Here, even if the Court assumed *arguendo* that the July 10, 2018 EMG was "new

and material," Plaintiff has not advanced any argument on the issue of "good

cause" for failing to submit evidence of the July 10, 2018 EMG report to the ALJ

before she rendered her October 30, 2018 decision, which was more than three

months after the administrative hearing.  Thus – even if the ALJ's decision did not

discuss her paresthesia as diagnosed by Dr. Murshed in May 2018 (ECF No. 15-

14, PageID.1268), and even if the July 10, 2018 EMG revealed wrist and spine

problems and the paresthesia diagnosis was the impetus for the December 2018

spinal MRIs (ECF No. 15-2, PageID.67, 70, 72), and even if the ALJ's RFC does

not mention manipulative requirements of the jobs assessed at Step 5 (ECF No. 15-

2, PageID.88, 95) – the Court need not consider whether the July 10, 2018 EMG –

the assumed "new and material evidence" – "make[s] it probable that the

Commissioner would have reached a different conclusion had the evidence been

considered."  (ECF No. 19, PageID.1552; ECF No. 23, PageID.1594).

### F.      Conclusion

In sum, Plaintiff has not satisfied her burden to overturn the ALJ's conclusions at Step 3 or within the RFC assessment as to the opinion evidence or Plaintiff's subjective symptoms, *Walters,* 127 F.3d at 529, and the Court should not consider the proposed new evidence.  Accordingly, as detailed in the foregoing discussion, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary judgment (ECF No. 19), **GRANT** Defendant's cross-motion for summary judgment (ECF No. 22), and **AFFIRM** the Commissioner's decision.

## III.    PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days after being served with a copy, as provided for in Fed. R. Civ. P. 72(b)(2) and E.D. Mich. LR 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Hum. Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.*  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after being served with a copy of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.*  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated:   August 6, 2021

Anthony P. Patti
UNITED STATES MAGISTRATE JUDGE